UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

HENRY E. KELTER,

    Plaintiff,

v.

JO ANNE B. BARNHART, Commissioner of Social Security,

    Defendant.

CASE NO. C05-5184KLS

ORDER REVERSING THE COMMISSIONER'S DECISION TO DENY BENEFITS

Plaintiff, Henry E. Kelter, has brought this matter for judicial review of the denial of his application for disability insurance benefits. The parties have consented to have this matter be heard by the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Magistrates Rule 13. After reviewing the parties' briefs and the remaining record, the undersigned hereby finds and ORDERS as follows:

FACTUAL AND PROCEDURAL HISTORY

Plaintiff currently is sixty years old.[1] Tr. 19. He has a ninth grade education and past work experience as a cabinet worker, router operator and taxi driver/dispatcher. Tr. 14. , 56, 64

Plaintiff filed an application for disability insurance benefits on April 3, 2002, alleging disability as of November 6, 2000, due to back, hand, arm, and knee pain. Tr. 14, 48-50, 55. His application was denied

---

[1] Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
Page - 1

initially and on reconsideration. Tr. 19-21, 27.  Plaintiff requested a hearing, which was held on September 14, 2004, before an administrative law judge ("ALJ"). Tr. 203.  At the hearing, plaintiff, represented by counsel, appeared and testified, as did a vocational expert. Tr. 203-29.

On October 29, 2004, the ALJ issued a decision determining plaintiff to be not disabled, finding specifically in relevant part as follows:

(1) plaintiff had not engaged in substantial gainful activity since his alleged onset date of disability;

(2) plaintiff had medically determinable impairments consisting of a right eye injury (non-severe) and chronic pain;

(3) none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, or limited his ability to perform a full range of work at the medium exertional level; and

(4) plaintiff was not under a disability at any time through October 29, 2004.

Tr. 17-18.  Plaintiff's request for review was denied by the Appeals Council on January 19, 2005, making the ALJ's decision the Commissioner's final decision. Tr. 5; 20 C.F.R. § 404.981.

On March 14, 2005, plaintiff filed a complaint in this court seeking judicial review of the ALJ's decision. (Dkt. #1).  Plaintiff argues that decision should be reversed and remanded either for an award of benefits or for further administrative proceedings, because:

(a) the ALJ erred in finding plaintiff did not have a severe vision impairment;

(b) the ALJ failed to follow steps four and five of the five-step disability evaluation process; and

(c) the ALJ erred in assessing plaintiff's residual functional capacity.

The undersigned agrees the ALJ improperly determined plaintiff to be not disabled, but, for the reasons set forth below, finds this matter should be remanded for further administrative proceedings.

## DISCUSSION

This court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir.

1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.   The ALJ Properly Found Plaintiff Did Not Have a Severe Vision Impairment

To determine whether a claimant is entitled to disability benefits, the ALJ engages in a five-step sequential evaluation process. 20 C.F.R. § 404.1520. At step two of that process, the ALJ must determine if an impairment is "severe". Id. An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(iii), ( c); Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b); SSR 85- 28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." See SSR 85-28, 1985 WL 56856 *3; Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988). Plaintiff has the burden of proving that his "impairments or their symptoms affect his ability to perform basic work activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998). The step two inquiry described above, however, is a *de minimis* screening device used to dispose of groundless claims. Smolen, 80 F.3d at 1290.

With respect to plaintiff's allegation of vision problems, the ALJ found as follows:

> The claimant testified at the hearing that he was discharged from his job because of excessive mistakes using the saw caused by vision problems. This allegation cannot be credited in light of objective evidence showing his best-corrected vision to be 20/20 in both eyes. Eye examination in September 1995 showed no significant problems in the eye and that he perhaps required a change in his prescription for glasses. (Exhibit 6F/12) During consultative examination on July 6, 2002, the claimant reported no complaints of vision problems and Snellen's Test with lenses confirmed 20/20 vision in both eyes. (Exhibit 4F/1-6)

Tr. 17. Accordingly, the ALJ found plaintiff's vision impairment to be non-severe. Id. Plaintiff challenges the ALJ's findings on this issue, arguing that his subjective complaints of vision problems are supported by objective medical findings. While it may be true that the objective medical evidence in the record shows that plaintiff has some vision problems, the undersigned cannot say the ALJ erred in finding that evidence failed to indicate he had significant work-related limitations resulting therefrom.

In late April 1990, plaintiff saw Dr. Peter B. Shelley, reporting that he could not "see well up into

the right" on his right side, and that when he drove, he "sometimes" felt he was "looking through a tunnel." Tr. 120. The tunnel vision lasted "just a short period of time," and plaintiff reported that such occurrences happened only "two or three times in the last year." Id. On examination, plaintiff was noted to be able to see 20/20 "in each eye" with his glasses. Id. He had both a "superior and temporal loss on the right eye only." Id. A "peripheral vision loss superiorly in the right eye" was confirmed on testing conducted in early May 1990. Tr. 119. However, Dr. Shelley "certainly" was "not worried" about plaintiff's report of tunnel vision, opining that it probably was "something like migraine." Tr. 120.

Plaintiff's vision was tested again by Dr. Shelley in early April 1993. Plaintiff complained that he had "difficulty with fine, close work." Tr. 118. Testing at the time indicated he "had vision of 20/25+ in the right eye and 20/20 in the left eye." Id. Thus, with his "current glasses," plaintiff was found to have "a mild reduction" in his "reading acuity." Id. With "new glasses," however, he could "see 20/20 in each eye," although the right eye was weaker, with "peripheral vision loss out about ten to twenty degrees." Id. With respect to plaintiff's complaints, Dr. Shelley stated that many of those problems were due to the fact that he was forty-seven years old and that his lens was "not focusing properly." Id. Thus, Dr. Shelley told plaintiff that "[e]ven with bifocals," his vision would never be "as perfect as it was when" he was younger, and he would continue to have problems with fine, close work. Id.

Further vision testing conducted in late September 1995, showed plaintiff's "[b]est corrected visual acuity" to be "OD: 20/20-, and OS: 20/20." Tr. 122. Again, it was noted that plaintiff had "a peripheral vision loss superiorly in the right eye." Id. This condition, however, was felt to be "stable." Id. Because of the "slight change" in plaintiff's vision, he was advised to change his prescription. Id. Further, plaintiff's "fluctuating vision" was deemed to likely be "due in part to his dry eyes . . . and his right field loss which" caused "him some disturbances visually at times." Id.

Plaintiff underwent a physical examination in early July 2002. He did not report any complaints or problems with his vision at the time, and was found to have 20/20 vision in both eyes "[w]ith lenses." Tr. 102-04. Thus, while there is objective medical evidence in the record indicating plaintiff had some vision problems in 1990 and 1995, and continues to have poorer vision without glasses (Tr. 104), with glasses, no such problems were reported or noted during his most recent vision testing. Accordingly, the evidence in the record does not establish that plaintiff had a medically determinable impairment that caused significant

REPORT AND RECOMMENDATION
Page - 4

work-related limitations during the relevant time period here. As such, the undersigned finds no error in the ALJ's step two analysis.

II.     The ALJ's Remaining Disability Evaluation Process Analysis

Plaintiff argues the ALJ erred in failing to make findings regarding his ability to perform his past relevant work or to do other jobs existing in significant numbers in the national economy at steps four and five of the disability evaluation process respectively. See 20 C.F.R. § 404.1520(a)(4)(iv)-(v). Defendant argues the ALJ was not required to do so, because he found plaintiff to be not disabled at step two of that process. That is, defendant asserts that the ALJ found none of plaintiff's impairments to be severe. See 20 C.F.R. § 404.1520(c) (if claimant has no impairment or combination of impairments which significantly limits his or her physical or mental ability to do basic work activities, he or she will not be found to have severe impairment and thus not disabled); Bowen v. Yuckert, 482 U.S. 137, 148 (1987) (if claimant is not able to show he or she has medically severe impairment, there is no reason for Commissioner to go on to consider claimant's age, education, and work experience).

Plaintiff counters that it is not clear from the ALJ's decision whether the ALJ actually stopped his disability evaluation process analysis at step two. He argues that while the ALJ did find he had no severe impairment with respect to his vision problems, the ALJ found his remaining impairments to be severe, but then failed to address those impairments in steps four and five. The undersigned agrees that is not clear the ALJ confined himself to step two of the disability evaluation process. For example, while the ALJ cited to 20 C.F.R. § 404.1520(c) in stating that plaintiff "was not under a disability at any time on or before his date last insured," the ALJ also expressly found that plaintiff did "not have any impairment or combination of impairments that meets or equals any listing or that limits is ability to perform a full range of work at the medium exertional level." Tr. 17.

It seems quite clear that the reference to meeting or equaling any listing refers to step three of the disability evaluation process. At that step, the Commissioner determines whether any of the claimant's impairments meet or equal any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). It is less clear whether in stating that plaintiff was not limited in his ability to perform a full range of medium work, the ALJ was proceeding on to steps four and/or five. In general though, the determination of a claimant's exertional ability (e.g., the ability to perform at the level of sedentary, light or

REPORT AND RECOMMENDATION
Page - 5

1  medium work) is only made after it is found that the claimant is not disabled at step three.  That is, the ALJ
2  has found disability cannot be determined on the basis of medical evidence alone.

3  In any event, it appears that the ALJ did go beyond step two in evaluating plaintiff's allegations of
4  disability.  The ALJ states in his opinion that plaintiff's "complaints of pain and limitation, although severe
5  at times, did not prevent him from performing a full range of work at the medium exertional level." Tr. 17.
6  As such, the ALJ admits that plaintiff's pain complaints have been severe, but does not further define the
7  term "at times."  This term could mean any amount of time, say, for example, anywhere from a few days to
8  a number of months or longer, although defendant argues that it clearly concerns a period of time of less
9  than a year, in which case it could not be found to be disabling. See Tackett v. Apfel, 180 F.3d 1094, 1098
10 (9th Cir. 1999) (claimant has burden of proving he or she suffers from medically determinable physical or
11 mental impairment that can be expected to result in death or that has lasted or can be expected to last for
12 continuous period of not less than twelve months).

13 Regardless, the undersigned cannot ignore the fact that the ALJ made a step three determination,
14 and found plaintiff capable of performing a full range of medium work, a probable reference, as discussed
15 above, to plaintiff's residual functional capacity to perform her past relevant or other work.  It is not clear,
16 furthermore, that the record supports the ALJ's implied determination that plaintiff's pain complaints are
17 not always severe.  For example, plaintiff was examined by Dr. Harold Quint in early July 2002.  Dr. Quint
18 provided the following functional assessment of plaintiff's ability to work:

> The claimant can be expected to stand and walk for about two hours during an eight-hour workday.  He is limited by his back discomfort.  Of note, he may benefit from having recent x-rays and CT and MRI of the back.  He can be expected to sit for six hours.  He requires no assistive devices.
>
> He can occasionally and frequently carry 10 pounds.  He is limited by his back pain and hand discomfort.  He has frequent postural limitations because of back discomfort, knee pain, and also shoulder discomfort with pulling.  He has occasional manipulative limitations because of hand pain and swelling.  The claimant has no environmental restrictions.

Tr. 106-07.  It certainly appears that such limitations would significantly restrict plaintiff's ability to work.
In addition, Dr. Quint put no time limits on these limitations.  That is, he did not state or otherwise indicate
that plaintiff experienced these limitations only "at times."  It does not seem that the ALJ considered this
assessment, however, as he made no mention of it in his decision.

While there is evidence in the record that plaintiff's pain and other limitations may not be as severe

REPORT AND RECOMMENDATION
Page - 6

as indicated by Dr. Quint (Tr. 99-101, 108, 123, 135, 139-40, 144-45, 159, 163, 167, 170, 174, 177, 182, 184-86, 190-91, 193-94, 197-98), other evidence supports Dr. Quint's findings (Tr. 195-96, 200), and the fact is the ALJ did not provide a proper analysis of the evidence as a whole. Indeed, the ALJ appears to have based his determination that plaintiff was able to perform at the medium exertional level solely on plaintiff's own testimony and self-reports. Although the ALJ discredited that testimony, and plaintiff has not challenged that finding here, there is no indication the ALJ's findings concerning plaintiff's ability to work was based on a proper analysis of the medical evidence in the record. Accordingly, the undersigned finds that the ALJ erred in determining plaintiff's pain complaints to be non-severe, and failed to conduct a proper step four and step five analysis.

III.  The ALJ Erred in Evaluating Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. Id. Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. Id. However, a claimant's inability to work must result from his or her "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's residual functional capacity, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

Plaintiff argues the ALJ erred in finding him capable of performing the full range of medium work. The undersigned agrees. As discussed above, the ALJ's analysis of the medical evidence in the record was seriously deficient, in that the ALJ failed to give any consideration to the report of Dr. Quint. Indeed, also as discussed above, it appears the ALJ did not provide any analysis of the medical evidence in the record as a whole concerning plaintiff's functional capabilities, except for that relating to plaintiff's vision problems. Accordingly, the undersigned is unable to determine whether the ALJ's finding that plaintiff could perform

the full range of medium work is supported by the substantial evidence in the record.

IV.     This Matter Should Be Remanded for Further Administrative Proceedings

The court may remand a case "either for additional evidence and findings or to award benefits." Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996). Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Id.; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues remain with respect to the severity of plaintiff's pain complaints, his residual functional capacity, and his capability of performing his past relevant work or doing other jobs existing in significant numbers in the national economy, it is proper to remand this matter to the Commissioner for further administrative proceedings to re-consider those issues.

## CONCLUSION

Based on the foregoing discussion, the court finds the ALJ improperly determined plaintiff was not disabled. The ALJ's decision, therefore hereby is reversed and remanded to the Commissioner for further administrative proceedings in accordance with this Order.

DATED this 8th day of December, 2005.

Karen L. Strombom
United States Magistrate Judge